**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEGHENY CRANE RENTAL, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  2:19-cv-1359 |
| | ) |
| DENNIS ALLISON | ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT**

Plaintiff Allegheny Crane Rental, Inc. ("Allegheny Crane") files the within Verified

Complaint against Defendant Dennis Allison ("Allison") for unlawful misappropriation of trade

secrets and unfair competition.

**I.      PARTIES**

1.      Allegheny Crane is a Pennsylvania corporation with offices located at 4200

Steubenville Pike, Pittsburgh, Pennsylvania 15205.

2.      Allison is an adult individual residing at 196 Morrison Drive, Pittsburgh,

Pennsylvania 15216.

**II.     JURISDICTION**

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action

arises under the federal Defend Trade Secrets Act, 18 U.S. Code Chapter 90.

4.      Additionally, this Court has personal jurisdiction over Allison because his

contacts with this forum establish personal jurisdiction.

5.      Allison resides in Pittsburgh, Pennsylvania and worked for Allegheny Crane in

Pittsburgh, Pennsylvania.

6.      Venue is proper in the United States District Court for the Western District of

Pennsylvania under 28 U.S.C. § 1391(a)(1)-(2) because Allison resides in the Western District of

Pennsylvania and a substantial part of the events giving rise to the claims herein occurred in the Western District of Pennsylvania.

III.   **FACTS**

   A.   **Allegheny Crane employed Allison as a Sales Representative.**

   7.   Allegheny Crane is a full-service crane operations provider.

   8.   Allegheny Crane services a wide range of clients, including clients in the HVAC, Oil & Gas, and Excavating industries.

   9.   Allegheny Crane prides itself on providing "personal service [its] competitors don't offer," as well as the tools and skill necessary to perform the job at hand safely and efficiently.  *See* Allegheny Crane Rental Philosophy and Full Services Operations as set forth at http://www.alleghenycranerental.com/full-service-operations.html (last visited October 14, 2019).

   10.   In many cases clients in the crane operations industry consider relationships, rather than price or skill alone, in awarding business.

   11.   Therefore, client relationships are vital to Allegheny Crane's business.

   12.   Allegheny Crane puts its business in the hands of its salespeople by entrusting them with its client relationships.

   13.   Allison began work as a Sales Representative at Allegheny Crane on or about January 29, 2018.

   14.   One of only two Sales Representatives, Allison presents himself as the Director of Business Development and Marketing.

LEGAL\43262744\4



15.     In his role with Allegheny Crane, Allison was responsible for creating new client relationships, growing existing client relationships, and business development.

**B.      Allegheny Crane trusted Allison with its most valuable information and client relationships.**

16.     During his employment with Allegheny Crane, Allison was privy to Allegheny Crane's confidential and proprietary information, including customer contracts, pricing and pricing charts, contracts, job quotes, operator detailed information, billing files, pay rates, pricing models, target prospective clients and more (essentially all Allegheny Crane information other than Allegheny Crane personnel files and social security numbers) ("Confidential Information and Trade Secrets").

17.     This information is particularly valuable because the Company has been in business for 50 years and has a huge track of existing clients and details related thereto.

18.     Allegheny Crane makes a significant investment into its customer development and, although it is impossible to quantify the value of Allegheny Crane's client information, fixed fees include the cost of icrane software ($1,000/year) and 3D Lift Plan (approximately $1,500/month) and construction journals (approximately $1,000/year).

LEGAL\43262744\4

19.     Allegheny Crane protects its Confidential Information and Trade Secrets by restricting access to such information, maintaining passwords for all of its programs, and informing its employees of their confidentiality obligations.

20.     For example, of Allegheny Crane's 16 employees, the only employees who have password-protected access to icrane are the CEO, Controller, the two salespersons, and the sole dispatch employee.

21.     Only Allegheny Crane's CEO and salespersons have password-protected access to 3D Lift.

22.     Allegheny Crane's company emails are password protected by custodian.

23.     Furthermore, employees are reminded of their confidentiality obligations throughout their employment.

24.     In his pre-employment discussions with the CEO, Allison was instructed that all Allegheny Crane customer information was confidential.

25.     Allison also received an offer letter that specifically detailed the confidential nature of Allegheny Crane's clients.

26.     Allegheny Crane also has policies that protect confidential company information. Allegheny Crane's policies are given to all new hires (including Allison) and are emailed electronically.  Employees can access hard copies of the policy manual, which are stored with Dispatch, Human Resources, and the Controller.

**C.     Allison stole more than a hundred folders containing Confidential Information and Trade Secrets from Allegheny Crane in anticipation of his termination.**

27.     On or about June 20, 2019, Allegheny Crane's Human Resources Director Susan Ritchey ("Ritchey"), requested a meeting with Allison to discuss his employment.

28.     The meeting took place on June 25, 2019, at which time Allison's employment was terminated.

29.     During the meeting, Allegheny Crane requested that Allison return all Allegheny Crane property, including his Allegheny Crane-issued truck, laptop, phone, keys, gate fob and company credit card.

30.     Allison refused.

31.     In fact, Allison indicated that – because he had anticipated that the meeting would result in his termination – he intentionally did not bring the truck, laptop, phone, keys, gate fob and company credit card to work that day.

32.     Allison went so far as to arrange alternative transportation so that Allegheny Crane's truck would not be on the premises and, consequently, would be more difficult for Allegheny Crane to obtain.

33.     It is now clear that, in anticipation of his termination, Allison also made arrangements to take key client information from Allegheny Crane.

34.     Forensic analysis conducted on Allison's company-issued laptop shows that Allison connected an external USB to the laptop on June 21, 2019 – the day after he received Ritchey's meeting request and less than four days prior to his termination.  *See* Exhibit A, Declaration of Scott Keeble, Paragraphs 2 - 4.

35.     Between 5:24 p.m. and 6:06 p.m. on June 21, 2019, Allison saved 128 folders from his work laptop to the USB.  *See* Declaration of Scott Keeble, Paragraphs 5 - 6.

36.     These folders contained Confidential Information and Trade Secrets regarding Allegheny Crane and its clients.

37.     By way of example, upon information and belief, these folders contain detailed crane operator information and detailed customer information, which includes customer contract information (names, phone numbers, emails), pricing, quotes, invoice numbers, payments, pay cycles, number of jobs, appointments, job status, equipment needed and unit pricing.  *See, e.g.* Exhibit A, Declaration of Scott Keeble, Exhibit 1, which contains folder names including "ACR Crane Info," "ACR Customer-vendor docs," "ACR Misc Info," "ACR Operator Info," "Misc Estimates," and "Misc Quotes."

38.     Less than an hour later, between 6:06 p.m. and 6:10 p.m. the same day, Allison deleted 131 files from his work laptop.  *See* Exhibit A, Declaration of Scott Keeble, Paragraphs 7.

39.     When Allegheny Crane learned of Allison's conduct, Allegheny Crane's counsel repeatedly asked Allison's counsel for the USB containing its Confidential Information and Trade Secrets.

40.     Allison has not returned the USB and his counsel will not provide a date certain for return of the USB.

41.     At this point, it is unclear how much of Allegheny Crane's Confidential Information and Trade Secrets Allison has used and disclosed, but Allison must be stopped so that he does not continue to irreparably harm Allegheny Crane.

42.     Allison's actions are knowing, willful, unfair, and will continue unless they are stopped by an Order of the Court.

43.     Time is of the essence in this matter because if Allison is not stopped, he and/or Allegheny Crane's competitors will benefit from Allegheny Crane's Confidential Information and Trade Secrets, including its goodwill and client relationships, at Allegheny Crane's expense.

44.     It is impossible to quantify the damage done to Allegheny Crane by Allison's possession and use of its Confidential Information and Trade Secrets.

      **D.**     <u>**Allegheny Crane is entitled to a temporary restraining order and/or preliminary injunction.**</u>

45.     Allegheny Crane is likely to succeed on the merits of this case because it has legitimate business interests to protect, and Allison's unlawful conduct is open, blatant and obvious.

46.     Unless and until Allison is enjoined from his wrongful and unlawful conduct, Allegheny Crane has been and will continue to be irreparably harmed by such conduct. Allegheny Crane's irreparable harm includes, without limitation:  (a) having to compete against Allison, who is in possession of and/or has full knowledge of its Confidential Information and Trade Secrets; (b) the loss of opportunities to provide services to its current and prospective clients; (c) the loss of goodwill; and (d) diminution in value of its Confidential Information and Trade Secrets due to actual and threatened misappropriation.

47.     Allegheny Crane's customer relationships, goodwill, competitive advantage, and the security and value of its Confidential Information and Trade Secrets will be immediately and irreparably harmed if injunctive relief is not granted.

48.     Allegheny Crane will suffer far greater harm if injunctive relief is not granted than Allison will suffer if it is granted.

49.     Indeed, Allison will suffer no harm but will simply be required to return Allegheny Crane's property.

50.     Granting a temporary restraining order, including a preliminary injunction, would serve the public interest.

LEGAL\43262744\4

## COUNT I
## <u>Violation of the Defend Trade Secrets Act</u>

51.     Allegheny Crane incorporates by reference Paragraphs 1 through 50 of the

Verified Complaint as if the same were set forth in full herein.

52.     Allegheny Crane owns valuable Confidential Information and Trade Secrets.

53.     Allegheny Crane has spent significant time and money developing such

Confidential Information and Trade Secrets.

54.     Allegheny Crane's Confidential Information and Trade Secrets are kept

confidential and not publicly disclosed.

55.     In the course of his employment, Allegheny Crane afforded Allison access to and

use of its Confidential Information and Trade Secrets.

56.     The Confidential Information and Trade Secrets to which Allison had access is

related to Allegheny Crane's products or services that are used in or intended for use in,

interstate or foreign commerce.

57.     Disclosure and unauthorized use of this type of information undermines

Allegheny Crane's competitive position in the crane operation services industry.

58.     Allison is still in possession of Allegheny Crane's Confidential Information and

Trade Secrets.

59.     On information and belief, Allison has used, disclosed or relied upon Allegheny

Crane's Confidential Information and Trade Secrets in order to harm Allegheny Crane or benefit

himself or Allegheny Crane's competitors.

60.     Allison's conduct is knowing, willful, intentional, malicious, unprivileged, in bad

faith, and caused - and will continue to cause - immediate and irreparable harm to Allegheny

Crane.

61.     Pursuant to Section 1836 of the Defend Trade Secrets Act, Allegheny Crane is entitled to injunctive relief, compensatory damages, exemplary damages an award of reasonable attorneys' fees, and/or other appropriate relief.

**COUNT II**
**Violation of the Pennsylvania Uniform Trade Secrets Act**

62.     Allegheny Crane incorporates by reference Paragraphs 1 through 61 of the Verified Complaint as if the same were set forth in full herein.

63.     Allison is a "person" as defined by the Pennsylvania Uniform Trade Secrets Act ("PUTSA") codified at 12 Pa. Cons. Stat. Ann. § 5301 *et seq.*

64.     Allegheny Crane owns valuable Confidential Information and Trade Secrets.

65.     In the course of his employment, Allegheny Crane afforded Allison access to and use of its Confidential Information and Trade Secrets.

66.     Allegheny Crane has spent significant time and money developing such Confidential Information and Trade Secrets.

67.     Allegheny Crane's Confidential Information and Trade Secrets are kept confidential and not publicly disclosed.

68.     Disclosure and unauthorized use of this type of information undermines Allegheny Crane's competitive position in the crane operations services industry.

69.     Allison is still in possession of Allegheny Crane's Confidential Information and Trade Secrets.

70.     On information and belief, Allison is still in possession of, or has used, disclosed or relied upon Allegheny Crane's Confidential Information and Trade Secrets in order to harm Allegheny Crane or benefit himself or Allegheny Crane's competitors.

71.     Allison's conduct is knowing, willful, intentional, malicious, unprivileged, in bad

faith, and caused - and will continue to cause - immediate and irreparable harm to Allegheny

Crane.

Pursuant to Sections 5303-5305 of the PUTSA, Allegheny Crane is entitled to injunctive relief,

double damages and affirmative relief to ensure the protection of its trade secrets, an award of

reasonable attorneys' fees, exemplary damages and/or other appropriate relief.

**COUNT III**
**Unfair Competition**

72.     Allegheny Crane incorporates by reference Paragraphs 1 through 72 of the

Verified Complaint as if the same were set forth in full herein.

73.     Allison, by engaging in the conduct described above, has engaged in unfair

competition with Allegheny Crane.

74.     Allison's misappropriation of Allegheny Crane's information has caused (and will

continue to cause) damage to Allegheny Crane's goodwill, client relationships, and valuable

business interests.

75.     Allison's conduct has been (and continues to be) willful, intentional, and

unprivileged and has caused (and will continue to cause) Allegheny Crane to suffer immediate,

irreparable harm.

76.     Allison's conduct, as described above, is contrary to honest industrial and

commercial practices.

**PRAYER FOR RELIEF**

WHEREFORE, Allegheny Crane respectfully requests this Court enter an order:

1.     Enjoining Allison, preliminarily and then permanently, from:

    a.      misappropriating or disclosing or making available to any person or any entity Allegheny Crane's Confidential Information and Trade Secrets, as defined above;

    b.      possessing any of Allegheny Crane's Confidential Information and Trade Secrets, as defined above; and

    c.      unlawfully competing with Allegheny Crane in violation of the Agreement.

2.      Requiring Allison to return all Allegheny Crane property and verify by affidavit his return of all of Allegheny Crane Confidential Information and Trade Secrets, as defined above.

3.      Requiring Allison to permit a third-party forensic vendor access to his devices, electronic accounts and systems to ensure that any and all of Allegheny Crane's Confidential Information and Trade Secrets are located and removed.

4.      Awarding Allegheny Crane compensatory damages, including pre- and post-judgment interest.

5.      Awarding Allegheny Crane punitive damages and/or double damages pursuant to 12 Pa. Cons. Stat. Ann. § 5304 for Allison's willful, intentional and malicious conduct.

6.      Awarding Allegheny Crane all costs and expenses in connection with this action, including its reasonable attorneys' fees pursuant to 12 Pa. Cons. Stat. Ann. § 5305.

7.      Awarding Allegheny Crane exemplary damages for willful and malicious misappropriation under the Defend Trade Secrets Act.

8.      Awarding any other relief as the Court may deem to be just or appropriate.

Dated: October 22, 2019

Respectfully submitted,

COZEN O'CONNOR

By:  */s/ Bethany C. Salvatore*
Bethany C. Salvatore  (PA 206322)
bsalvatore@cozen.com
Tiffany A. Jenca (PA 319526)
tjenca@cozen.com
Thomas S. Giotto (PA 39568)
tgiotto@cozen.com

One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219-1410
Phone:412-620-6516


Counsel for Plaintiff

## **VERIFICATION**

I, Susan Ritchey, Allegheny Crane, Inc. Human Resources, am authorized to execute this verification on behalf of Allegheny Crane, Inc.  I have read the foregoing Verified Complaint and I believe it to be true and correct to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn declarations under penalty of perjury.

Dated: October 18, 2019

12